# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**AMELLIA DE ANDA,**

    **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　No. 18-cv-0087 SMV

**NANCY A. BERRYHILL,**
**Acting Commissioner of**
**Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and/or Remand [Doc. 22] ("Motion"), filed on September 13, 2018. The Commissioner responded on November 8, 2018. [Doc. 24]. Plaintiff replied on December 4, 2018. [Doc. 25]. The parties have consented to my entering final judgment in this case. [Doc. 19]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Plaintiff fails to meet her burden as the movant to show that the Administrative Law Judge ("ALJ") did not apply the correct legal standards or that her decision was not supported by substantial evidence. Accordingly, the Motion will be denied and the Commissioner's final decision, affirmed.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481 (1980). This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

### Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A) (2015); 20 C.F.R. § 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920 (2012); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**Procedural Background**

Plaintiff applied for supplemental security income ("SSI") on May 10, 2011. Tr. 193–98; *see* Tr. 30. She alleged a disability-onset date of March 1, 2010. Tr. 193, 445; *see* Tr. 30. Her claims were denied initially and on reconsideration. *See* Tr. 30. ALJ Ann Farris held a hearing on August 29, 2013, in Albuquerque, New Mexico. Tr. 30, 44–74. Plaintiff appeared in person with her attorney. *Id.* The ALJ heard testimony from Plaintiff and an impartial vocational expert

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

("VE"), Thomas A. Grenier. *Id.* The ALJ issued her unfavorable decision on November 14, 2013. Tr. 39. The Appeals Council denied review on June 18, 2015. Tr. 516–19. Plaintiff appealed to this Court for the first time on August 4, 2015. Before the appeal was resolved, Plaintiff filed a subsequent claim for SSI on September 21, 2015. *See* Tr. 580. The Honorable Kirtan Khalsa, United States Magistrate Judge, presiding by consent, reversed the Commissioner's final decision and remanded the case for further proceedings on September 27, 2016. Tr. 557–77; No. 15-cv-0678 KK.

On remand, the Appeals Council vacated ALJ Farris's November 14, 2013 decision, consolidated the old and new SSI applications, and remanded the consolidated claims back to ALJ Farris on February 1, 2017. Tr. 580. ALJ Farris held a second hearing in Albuquerque, New Mexico on August 15, 2017. Tr. 468–98. Plaintiff appeared pro se and in person. *See id.* The ALJ heard testimony from Plaintiff; Plaintiff's friend, Jose R. Contreras; and the VE, Mr. Grenier. *Id.*

The ALJ issued her second unfavorable decision on November 24, 2017. Tr. 460. At step one she found that Plaintiff had not engaged in substantial gainful activity since April 24, 2011. Tr. 447. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative lumbar disc disease; scoliosis; obesity; neurocognitive disorder with executive function deficit; polysubstance abuse; attention-deficit hyperactivity disorder (ADHD); bipolar disorder; personality disorder with borderline traits; and post-traumatic disc [sic] disorder (PTSD)." *Id.* Further, she found that Plaintiff's irritable bowel syndrome was not severe. Tr. 448.

At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 448–50. Because none of Plaintiff's

4

impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 450–59. The ALJ found that Plaintiff had:

> the [RFC] to perform a limited range of sedentary work as defined in 20 [C.F.R. §] 416.967(a). She can occasionally climb stairs and ramps but never climb ladders or scaffolds; the claimant can occasionally balance and stoop but never kneel, crouch, or crawl; the claimant can make simple work-related decisions with few workplace changes; the claimant should have no interaction with the general public; and the claimant should have only occasional and superficial interactions with co-workers.

Tr. 450.

At step four the ALJ found that Plaintiff had no past relevant work. Tr. 459. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 459–60. She found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* Plaintiff timely filed the instant action on January 29, 2018. [Doc. 1].

## **Analysis**

Plaintiff makes several arguments in favor of remand, but none is persuasive. First, even if the ALJ's discussions of Plaintiff's obesity fell technically short, Plaintiff fails to show any prejudice. Second, Plaintiff fails to show reversible error in the evaluation of the opinions of PA Francis and Dr. Simutis. Third, Plaintiff fails to show reversible error at step five because other, unchallenged findings are adequate to support the ALJ's determination that Plaintiff can perform other work that exists in significant numbers in the national economy. Plaintiff's motion will be denied, and the Commissioner's decision will be affirmed.

## I. Plaintiff fails to show that she was prejudiced by the ALJ's evaluation of her obesity.

Plaintiff cites to Social Security Ruling ("SSR") 02-1p, which explains that obesity can affect functioning and, thus, affect the RFC. 2002 SSR LEXIS 1, at *18–19. The SSR further explains that individuals with a body mass index ("BMI") of 40 or over have "extreme obesity" and are "at greatest risk of developing obesity-related impairments." *Id.* at *4. Obesity commonly leads to, "and often complicates, chronic diseases the cardiovascular, respiratory, and musculoskeletal body systems." *Id.* at *6. "Obesity may also cause or contribute to mental impairments such as depression." *Id.* at *7. The Administration further recognizes that "[o]besity may also affect an individual's social functioning. *Id.* at *16. Because of the relationship between obesity and functioning, the ALJ must "explain how [she] reached [her] conclusions on whether obesity caused any physical or mental limitations." *Id.* at *5.

Here, the ALJ found that Plaintiff's obesity was severe at step two. Tr. 447. In her narrative discussion of the medical records, the ALJ described Dr. Moedl's finding of morbid obesity (5'3" and 273 pounds), Tr. 452, as well as Dr. Pappu's and Dr. Otero-Lopez's findings of BMI scores above 40, Tr. 453. At step three, the entirety of the ALJ's discussion of obesity is as follows:

> Pursuant to Social Security Ruling 02-lp, there is no evidence that the claimant's obesity has increased the severity of her co-existing or related impairments to such a degree that the combination of impairments meets or medically equals the requirements of s listed impairment.

Tr. 450. As to the RFC assessment, the entirety of the ALJ's discussion of obesity is as follows:

> Pursuant to Social Security Ruling 02-lp, I have considered the effects of the claimant's obesity. There is no evidence that the claimant's obesity has increased the severity of the claimant's

6

> coexisting or related impairments to such a degree that the combination of impairments would preclude the claimant from performing sedentary work as described above on a regular and continuing basis.

Tr. 454.

Plaintiff argues that these discussions are not enough. She argues that the ALJ failed to "meaningfully consider" her obesity at steps three and four, and therefore, remand is required. [Doc. 22] at 16–17, 19–20. Plaintiff complains that the ALJ provided only boilerplate findings on her obesity. *Id.* at 19. Moreover, Plaintiff argues that the ALJ erred in failing to discuss "the evidence that clearly supports the impact of obesity on the RFC." *Id.* at 20. As examples of such evidence, Plaintiff lists her height of 5'5"[3] and weight of 273 pounds. *Id.* (citing Tr. 452). She points to the fact that she has been instructed to lose weight to have back surgery. *Id.* Additionally, she points to her testimony that even though she is 32 years old, she feels 80. *Id.* (citing Tr. 488).

Defendant argues that there is no reversible error in the ALJ's evaluation of Plaintiff's obesity for two reasons. [Doc. 24] at 13–15. First, Defendant argues that the ALJ "specifically considered the effects of Plaintiff's obesity and discussed her obesity in conjunction with her other conditions, noting the lack of ramifications in areas typically impacted by obesity, such as her musculoskeletal system and joints." *Id.* at 13 (citing Tr. 452–54). She cites *Howard v. Barnhart* for the proposition that an ALJ's discussion of the evidence demonstrating a lack of ramifications from obesity, such as lack of marked arthritic pain, joint deformity, or musculoskeletal impairments, constitutes an adequate discussion. *Id.* (citing 379 F.3d 945, 948 (10th Cir. 2004)). The Court does not agree with Defendant that the ALJ's discussion here is on par with the

---

[3] Plaintiff's Motion lists her height as 5'5". [Doc. 22]. The portions of the record to which she cites, list her height at 5'3". Tr. 452, 295.

7

discussion in *Howard*. The discussions here consisted of conclusory findings that there was no evidence that Plaintiff met a listing or that her functioning was more restricted than reflected in the RFC assessment. Defendant's second argument, however, is more persuasive.

Next, Defendant essentially argues that Plaintiff fails to show any prejudice resulting from the ALJ's discussions about obesity. *Id.* at 14–15. Defendant argues that Plaintiff fails to identify any limitation, beyond those already listed in the RFC, that should have been included. *Id.* at 14–15. The ALJ's RFC assessment was for less than a full range of sedentary work and included additional postural limitations. Tr. 450. The Court fails to see what Plaintiff would hope to gain by a more thorough discussion of her obesity. She doesn't say. Plaintiff does not suggest which listing she might meet. She does not suggest what limitation should have been included in the RFC. Plaintiff cites to evidence of her extreme obesity, [Doc. 23] at 19–20, but so did the ALJ, Tr. 452–53. In fact, the ALJ herself found that Plaintiff's obesity was severe at step two. Tr. 447. Even if the ALJ's discussions of Plaintiff's obesity fell technically short, the Court finds that Plaintiff fails to show any prejudice. *See Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014) (ALJ's failure to give greater weight to a medical opinion not error where claimant is not prejudiced, because giving greater weight to the opinion would not have helped her); *see generally Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166, 1167 (10th Cir. 2012) ("[C]ommon sense, not technical perfection, is our guide."); *Bowen v. Yuckert*, 482 U.S. 137, 157 (1987) ("Perfection in processing millions of such claims annually is impossible[.]") (O'Connor, J., concurring).

<u>II. Plaintiff fails to show that the ALJ committed reversible error
in evaluating the opinions of PA Francis and Dr. Simutis.</u>

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161

8

(10th Cir. 2012) (citing 20 C.F.R. § 416.927(e)(2)(ii) (2012)[4]). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight she assigns to each medical source opinion and why. *Id.* When evaluating the opinion of any medical source, the ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); 20 C.F.R. § 416.927(c). Not every factor will apply in each case, and therefore, an ALJ is not required to discuss every factor. SSR 06-03p,[5] 2006 SSR LEXIS 5 at *5. "[T]he ALJ's decision is sufficient if it permits [the court] to follow the adjudicator's reasoning." *Keyes-Zachary*, 695 F.3d at 1164 (internal quotation marks omitted).

Moreover, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets

---

[4] These regulations apply to this case because Plaintiff's claims were filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

[5] SSR 06-03p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Plaintiff's claims were filed before March 27, 2017, SSR 06-03p applies to this case.

omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p,[6] 1996 SSR LEXIS 2, at *13, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. § 416.927(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

### A. Opinion of Physician's Assistant, PA Francis

Plaintiff challenges the ALJ's evaluation of PA Francis's opinion, [Doc. 22] at 14–15, 21, but her arguments are not persuasive. The ALJ accorded PA Francis's opinion "little weight," Tr. 452, but in large part, PA Francis's opinion is consistent with the ALJ's own RFC assessment, which was for a less than full range of sedentary work. *Compare* Tr. 287–88 (PA Francis's opinion), *with* Tr. 450 (ALJ's RFC assessment). There are differences, though. For example, PA Francis opined that Plaintiff would require three to four unscheduled breaks per day, could only occasionally lift fewer than ten pounds and never ten pounds or more, and that her impairments would cause her to miss work more than four times per month. Tr. 287–88. Plaintiff's argument matters because if the ALJ had adopted the entirety of PA Francis's opinion, the RFC assessment would have included those restrictions and presumably precluded all work.

Plaintiff first argues that the ALJ "failed to consider any of the *Goatcher* factors that favored a[cc]ording PA Francis's opinions additional weight." *Id.* at 21. However, the ALJ said

---

[6] SSR 96-5p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Plaintiff's claims were filed before March 27, 2017, SSR 96-5p applies to this case.

she considered all the evidence, *e.g.*, Tr. 445, and the Court takes her at her word, *see Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009). Remand is not warranted on this ground.

Next, Plaintiff argues that the ALJ failed to consider "the fact that PA Francis is a treating physician with longitudinal experience treating Plaintiff." *Id.* The Court disagrees; the ALJ explicitly referred to PA Francis's opinion as a "treating" opinion,[7] Tr. 452, and there is no dispute that, as a physician's assistant, she does not qualify as a "physician." Remand is not warranted on this ground.

Further, Plaintiff argues that the ALJ failed to "consider[] the consistency of PA Francis's opinions with the record as a whole." [Doc. 22] at 21. For example, Plaintiff argues that the neuropsychological findings and MRI findings "confirm both severe pathology and severe impact on the body and mind." *Id.* So, Plaintiff argues that more of an explanation is required about how "[PA] Francis's opinions and Plaintiff's symptoms are out of proportion with the objective evidence." *Id.* On review of the neuropsychological evaluation by Dr. Koltuska-Haskin, Tr. 982–90, and the MRI records, Tr. 782, 771, 955–56, the Court is not persuaded that the ALJ erred. These records could be read as supporting PA Francis's opinion; they are not inconsistent. But they could also be read as supporting the ALJ's RFC assessment; they are not inconsistent with the RFC. Neither the neuropsychological report nor the MRIs contains specific functional limitations and certainly nothing that would go to the disputed limitations in PA Francis's report (e.g., requiring three to four unscheduled breaks per day, only occasionally lifting fewer than ten

---

[7] Defendant argues that PA Francis's opinion does not qualify as a treating opinion in any case because she saw Plaintiff only once. [Doc. 24] at 15 (citing Tr. 380, 351). Plaintiff does not respond to this argument in any way. *See* [Doc. 25].

pounds, never lifting ten pounds or more, and missing work more than four times per month). Tr. 287–88. Remand is not warranted on this ground.

Finally, Plaintiff argues that the ALJ "characterize[d] PA Francis's examination as normal since there is no reference to joint or back pain. The implicit characterization by [the ALJ] that Plaintiff's examination was normal is contrary to the substantial evidence." [Doc. 22] at 21. The ALJ, however, did not implicitly find that PA Francis's findings were normal. Tr. 452. Instead, the ALJ found that PA Francis's opinion was "not supported by the [Plaintiff]'s treatment records and [was] not consistent with the [sic] [PA] Francis['s] treatment records showing [Plaintiff] denied back or joint pain and that she had no neurological deficits." Tr. 452 (citing Tr. 375). Plaintiff does not dispute that PA Francis's treatment records show that Plaintiff "denied back or joint pain and that she had no neurological deficits." *See* [Docs. 22, 25]. Rather, Plaintiff argues that these do not amount to "normal" exam findings. The Court agrees that they do not amount to normal exam findings, but the ALJ never said otherwise. The ALJ did not reject PA Francis's opinion based on normal exam findings.[8] Tr. 452. Plaintiff fails to show that this ground warrants remand.

Plaintiff's challenges are unpersuasive. The ALJ said that she considered all the evidence, and she discussed several of the *Goatcher* factors. Tr. 452. Specifically, the ALJ rejected PA Francis's opinion as "not supported by [Plaintiff]'s treatment records and . . . not consistent with PA Francis'[s] treatment records showing [Plaintiff] denied back or joint pain and that she had no neurological deficits." Tr. 452 (citations omitted). These findings correspond to *Goatcher*

---

[8] The ALJ did find that PA Francis's May 18, 2011 note reflected "normal" mood and affect "despite the diagnosis of bipolar affective disorder (depressed)." Tr. 455. But the ALJ did not say that she was rejecting PA Francis's opinion for this reason. *Id.*; see Tr. 452 (explaining the weight accorded to PA Francis's opinion).

12

factors three and four. The ALJ explicitly found that PA Francis's opinion was a "treating" opinion, Tr. 452, which corresponds to *Goatcher* factor number one.

Critically, Plaintiff does not challenge the reasons provided by the ALJ. Rather, she argues exclusively that the ALJ "failed to consider" other evidence that Plaintiff believes favored according more weight to PA Francis's opinion. This Court, however, may not reweigh the evidence. Even if the evidence cited by Plaintiff (such as the neuropsychological report or the MRI reports) supported PA Francis's opinion or supported a more restrictive RFC, reversal would not be warranted. For reversal, Plaintiff must show either that the ALJ failed to apply the correct legal standard in weighing PA Francis's opinion, or that the ALJ's findings are not supported by substantial evidence. Plaintiff shows neither.

### B. Opinion of Consultative Examiner, Dr. Simutis

Plaintiff challenges the ALJ's evaluation of Dr. Simutis's opinion, [Doc. 22] at 21–23, [Doc. 25] at 1–5, but her arguments are not persuasive. In relevant part, Dr. Simutis opined that Plaintiff was mildly limited in her ability to concentrate and persist on tasks and to adapt to change. Tr. 301. Dr. Simutis further opined that Plaintiff was markedly limited in her ability to understand and remember instructions and to interact with coworkers and the public. *Id.* The ALJ seemed to accept some but not all of Dr. Simutis's opinions. In pertinent part, the ALJ explained:

> I give some weight to Dr. Simutis' evaluation that the claimant is mildly limited in her abilities to concentrate and persist at tasks and to adapt to change, since it is consistent with the record as a whole, including the mental status examinations (such as that in Dr. Simutis' consultative examination report), the claimant's response to treatment, and her daily activities, including her ability to manage finances and care for and supervise her four-year old autistic son.
> I give little weight to Dr. Simutis' opinion that the claimant is markedly limited in her abilities to understand and remember

> instructions and to interact with co-workers and the public, as well as the GAF rating of 35, since they are not consistent with or supported by the mental status examinations in the record, the claimant's mental health treatment records, her response to mental health treatment, and her daily activities, including her ability to maintain relationships with her partner, her family, and a friend.

Tr. 456. Ultimately, the ALJ's RFC limited Plaintiff to "simple work-related decisions with few workplace changes[,] no interaction with the general public[,] and . . . only occasional and superficial interactions with co-workers." *Id.* at 450.

Plaintiff argues that the ALJ's evaluation of Dr. Simutis's opinion failed to comply with Judge Khalsa's previous remand order because the ALJ relied on Plaintiff's activities of daily living ("ADLs") to reject some of Dr. Simutis's limitations and failed to discuss Dr. Simutis's expertise as a psychologist. [Doc. 22] at 22 (citing Tr. 572–73). The Court is not persuaded.

In her remand order, Judge Khalsa reversed the earlier decision by ALJ Farris. In the earlier decision, ALJ Farris had rejected Dr. Simutis's opinion entirely. Among other reasons, the ALJ explained that Plaintiff's ADLs were inconsistent with Dr. Simutis's limitations, and she cited specifically to Plaintiff's report that she "could prepare meals, grocery shop, and do laundry[,] shop in stores and spen[d] time with her partner[, and Plaintiff was] capable of caring for her infant child[.]" Tr. 37. Judge Khalsa thoroughly discussed the evidence of Plaintiff's ADLs and found that "the ALJ's reliance on [Plaintiff]'s daily activities as a basis for rejecting Dr. Simutis's opinion is not supported by substantial evidence." Tr. 573.

Plaintiff now argues that Judge Khalsa "all but ordered ALJ Farris to hold that Plaintiff's daily activities weighed in favor of Dr. Simutis's opinions." [Doc. 22] at 22. The Court disagrees. Federal courts make no factual findings but, instead, are limited to reviewing the findings made by the Commissioner. *Hummel v. Heckler*, 736 F.2d 91, 93 (3d Cir. 1984); *see* 42 U.S.C. § 405(g)

(describing the authority of the federal court in social security appeals). The Court rejects Plaintiff's position that the ALJ was bound to find that Plaintiff's ADLs weighed in favor of adopting Dr. Simutis's entire opinion. Here, the Court is reviewing a different ALJ decision, in which the ALJ rejected only a portion of Dr. Simutis's opinion (whereas before she rejected the entire opinion). In this decision, the ALJ gave a different explanation as to why Plaintiff's ADLs weighed against Dr. Simutis's opinion than she gave in the first decision. *Compare* Tr. 456 (finding that Plaintiff's ADLs "including her ability to maintain relationships with her partner, her family, and a friend" were not consistent with Dr. Simutis's report of marked limitations in the ability to understand and remember instructions or interact with co-workers or the GAF of 35), *with* Tr. 37 (finding that Plaintiff's self-reported ability to "prepare meals, grocery shop, . . . do laundry[,] shop in stores[,] spen[d] time with her partner[, and] car[e] for her infant child[ are] inconsistent with the limitations Dr. Simutis has given"). Importantly, and as discussed further below, Plaintiff offers no substantive challenge to the reasons offered by the ALJ in this decision.

Plaintiff further criticizes the evaluation of Dr. Simutis's opinion as inadequate because, Plaintiff says, the ALJ failed to consider and discuss certain evidence (which Plaintiff believes would have shown the opinion was entitled to more weight). [Doc. 22] at 21–23. In particular, Plaintiff argues that the ALJ "failed to explain how Plaintiff's self-reports to Dr. Simutis of sadness, fatigue, worthlessness, guilt, difficulty thinking, difficulty concentrating, difficulty with decision making, daily thoughts about death, excessive anxiety, restlessness irritability[,] and hypervigilance" support the RFC assessment. [Doc. 22] at 21 (citing Tr. 570–71). Plaintiff argues that although the ALJ acknowledged Plaintiff's reports to Dr. Simutis about "shadow people and stabbing herself with scissors," the ALJ failed to discuss how these reports affected the weight

15

accorded to the opinion. *Id.* at 22. Finally, Plaintiff complains that the ALJ failed to consider the fact that Dr. Koltuska-Haskin's neuropsychological report is consistent with Simutis's opinions on social functioning (markedly limited), understanding and remembering instructions (markedly limited), and GAF of 35. [Doc. 22] at 22 (extensively quoting Dr. Koltuska-Haskins's report).

All the evidence cited by Plaintiff could be read as supporting Dr. Simutis's opinion; it is not inconsistent. But it could also be read as supporting the ALJ's RFC assessment; it is not inconsistent with the RFC, either. None of the evidenced cited by Plaintiff contains functional limitations or anything else that would support Dr. Simutis's assessed limitations over those in the RFC. The ALJ was not required to discuss every piece of evidence.

The ALJ gave varying weight to different portions of Dr. Simutis's opinion and explained her reasons for doing so. Critically, Plaintiff does not challenge those reasons. Even if the evidence cited by Plaintiff supported adopting more of Dr. Simutis's opinion, or supported a more restrictive RFC, reversal would not be warranted. This is because conflicting evidence is not enough. The fact that the evidence could be interpreted as warranting a more restrictive RFC is not enough. For reversal, Plaintiff must show either that the ALJ failed to apply the correct legal standard in weighing Dr. Simutis's opinion, or that the ALJ's decision is not supported by substantial evidence. Showing that substantial evidence is present to support a more favorable outcome is not enough to warrant remand.

Moreover, even if the ALJ had erred in weighing Dr. Simutis's opinion, Plaintiff fails to show that she was prejudiced. Defendant argues that Dr. Simutis's opinion is actually consistent with the ALJ's RFC assessment. [Doc. 24] at 19. Plaintiff offers only one argument in reply. She argues that the RFC assessment is inconsistent with a limitation to "no contact" with co-workers.

16

[Doc. 25] at 3. But Dr. Simutis did not indicate that Plaintiff could have "no contact" with co-workers; she opined only that Plaintiff had a marked limitation in ability to interact with co-workers. Tr. 301. Plaintiff fails to show that such limitation is not accounted for in the RFC's limitation to "only occasional and superficial interactions with co-workers." Accordingly, Plaintiff fails to show that the ALJ committed any error in weighing Dr. Simutis's opinion. And even if she had erred, Plaintiff fails to show that she was prejudiced by such error. Remand is not warranted.

### III. Plaintiff fails to show any reversible error in the ALJ's reliance on the testimony of the Vocational Expert.

Plaintiff challenges a statement made by the ALJ at step five. [Doc. 22] at 23–24. Remand is not warranted because other unchallenged findings at step five are adequate to support the ALJ's determination that Plaintiff can perform other work that exists in significant numbers in the national economy.

At the second administrative hearing, the ALJ took testimony from the VE. In pertinent part, the VE testified that based on the RFC ultimately adopted by the ALJ, a person of the same age, education, and work history as Plaintiff could perform the jobs of egg processor, cuff folder, and clearance cutter. Tr. 493–94. Based on the VE's testimony, the ALJ found at step five that Plaintiff was capable of performing other work that existed in significant numbers in the national economy and, thus, was not disabled. Tr. 459–60. *See* [Doc. 22] at 23–24; [Doc. 25]. These findings suffice to support the ALJ's step-five determination. Because Plaintiff makes no challenge to these findings, the ALJ's decision will be affirmed.

Although superfluous to the step-five determination, the ALJ's decision addresses a statement made by Plaintiff at the second hearing. At that hearing, Plaintiff proceeded pro se.

17

Tr. 471. During her opportunity to question the VE, Plaintiff stated that she "can't be around male population . . . without feeling extremely trapped and violated and not safe." Tr. 494. The ALJ wrote in her decision that "even assuming" Plaintiff had significant difficulty being around men, Plaintiff could still perform the jobs identified by the VE because they "require[d] the least amount of contact with anyone else" and because the VE testified that these jobs "would not require [Plaintiff] to interact with men." Tr. 460. Plaintiff challenges this discussion. She argues that the VE's testimony (that these jobs would not require Plaintiff to interact with men) impermissibly conflicted with the Dictionary of Occupational Titles ("DOT") because the DOT does not address any job's level of interaction with men. [Doc. 22] at 24. Plaintiff also argues that the ALJ's finding (that these jobs "require[d] the least amount of contact with anyone else") was "not a valid rationale because it reduce[d] the Administration's step[-]five burden of proof." *Id.* Even if Plaintiff's were correct that the DOT did not address any job's level of interaction with men, remand would not be warranted because the statements she challenges are superfluous. Neither the ALJ's step-five finding nor the ultimate determination of non-disability relies on these statements.

The ALJ did not find that Plaintiff had any restriction in interacting with men in particular. Tr. 450. Nor does Plaintiff argue that such a restriction should have been included in the RFC assessment. *See* [Docs. 22, 25]. The RFC assessment includes a limitation to "only occasional and superficial interactions with co-workers" and no interaction with the general public. Tr. 450. Plaintiff does not argue that the limitations in her RFC prevent her from performing the duties of egg processor, cuff folder, or clearance cutter. *See* [Docs. 22, 25]. Any error the VE or the ALJ might have made (regarding the jobs' levels of interaction with men) is not consequential. The

Court agrees with Plaintiff that, at step five, the "Administration must prove the existence of work in the national economy *within Plaintiff's RFC* that exist in significant numbers." *Id.* (emphasis added). Plaintiff fails to show that the ALJ did not meet that burden.[9]

## Conclusion

Plaintiff's arguments are not persuasive. She fails to show that any error in the discussions of obesity prejudiced her. She fails to show reversible error in the evaluations of the opinions of PA Francis and Dr. Simutis. Finally, Plaintiff fails to show reversible error at step five. Accordingly, Plaintiff's motion will be denied, and the Commissioner's decision will be affirmed.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and/or Remand [Doc. 22] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**

---

[9] Plaintiff also argues that the ALJ failed to ask the VE whether his testimony conflicted with the DOT. [Doc. 22] at 23. There are times when such a failure can trigger remand. *See Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999). None of those circumstances is present here. More to the point, though, the VE did, in fact, testify that he was aware that his testimony must be in accord with the DOT and that he would alert the ALJ to any variation between his testimony and the DOT. Tr. 491. Plaintiff fails to show reversible error.